

# NUMBER 13-23-00557-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**PAUL JAMES DONALDSON,**                                                  **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                          **Appellee.**

## ON APPEAL FROM THE 227TH DISTRICT COURT
## OF BEXAR COUNTY, TEXAS

# MEMORANDUM OPINION

**Before Justices Silva, Peña, and Fonseca**
**Memorandum Opinion by Justice Fonseca**

Appellant Paul James Donaldson was convicted by a jury of manslaughter, a second-degree felony. *See* TEX. PENAL CODE ANN. § 19.04(a). He pleaded true to an enhancement paragraph alleging that he had previously been convicted of a felony, *see id.* § 12.42(b), and the trial court sentenced him to life imprisonment and a $10,000 fine. On appeal, Donaldson argues the trial court erred by: (1) admitting evidence of "scientific

analysis performed by a non-testifying witness," thereby violating his right to confront witnesses; (2) admitting evidence regarding a prior conviction at the punishment phase; and (3) admitting evidence of the victim's character at the guilt-innocence phase. We affirm.[1]

## I. BACKGROUND

This case arises out of a motor vehicle collision on Interstate 35 in San Antonio in the early morning of January 15, 2017. Emergency personnel were concluding their work at the site of a previous unrelated accident on the northbound lanes, when they were alerted via radio about a Chevrolet pickup truck travelling the wrong way in the southbound lanes. Officers attempted to warn or stop the truck by shining a flashlight and throwing a flare; however, the truck did not stop. The truck collided head-on with a Mazda sedan being driven by Armando Ortiz. Ortiz was pronounced dead at the scene. Donaldson, the driver of the truck, was taken to the hospital, where he told police that he had ingested drugs the previous evening before he went to bed. A toxicology report showed that Donaldson had trace amounts of phentermine, imipramine, and methamphetamine in his system. Several months later, Donaldson made phone calls from jail in which he stated he was not surprised drugs were found in his system after the collision.

A jury convicted Donaldson of manslaughter and the trial court sentenced him as set forth above. This appeal followed.

---

[1] This appeal was transferred from the Fourth Court of Appeals in San Antonio pursuant to an order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001. We are required to follow the precedent of the transferor court to the extent it differs from our own. TEX. R. APP. P. 41.3.

## II. ADMISSION OF EVIDENCE

Donaldson's issues concern the admission of evidence. "We review a trial court's ruling on the admissibility of evidence under an abuse of discretion standard, and we must uphold the trial court's ruling if it was within the zone of reasonable disagreement." *Wells v. State*, 611 S.W.3d 396, 427 (Tex. Crim. App. 2020).

### A. Confrontation Clause

By his first issue, Donaldson contends that the trial court erred by admitting evidence concerning crash data retrieved from one of the vehicles involved in the collision. Specifically, he complains of testimony by Sergeant James Reyna of the San Antonio Police Department (SAPD) and David Lynch, M.D., a forensic pathologist with the Bexar County Medical Examiner's Office. Reyna testified that he and another officer obtained data from the airbag control module (ACM) in Ortiz's Mazda after the collision.[2] He said he gave the data to his supervisor, who then forwarded it to a "Detective O'Connell," who analyzed it.[3] Ultimately, Reyna testified that Donaldson's truck was going 50 to 54 miles per hour and Ortiz's vehicle was going "around 65" miles per hour at the time of the collision. Lynch testified regarding the results of Ortiz's autopsy, which had been performed by a different pathologist. The trial court overruled Donaldson's objections to the admission of both witnesses' testimony on grounds it they violated his right to confront witnesses under the Sixth Amendment to the United States Constitution.[4]

---

[2] He said that officers were not able to find an ACM in Donaldson's truck.

[3] Reyna explained that, at the time, he was not qualified to perform the analysis himself.

[4] The State contends in part that Donaldson failed to preserve this issue because, though he objected on confrontation clause grounds outside the presence of the jury and obtained adverse rulings, he did not renew those objections when the testimony was presented to the jury. We disagree. "When the court hears a party's objections outside the presence of the jury and rules that evidence is admissible, a party need not renew an objection to preserve a claim of error for appeal." TEX. R. EVID. 103(b).

The Confrontation Clause, applicable to the states via the Fourteenth Amendment, guarantees an accused the right to confront and cross-examine adverse witnesses. U.S. CONST. amends. VI, XIV; *Vinson v. State*, 252 S.W.3d 336, 338 (Tex. Crim. App. 2008); *Clark v. State*, 282 S.W.3d 924, 930 (Tex. App.—San Antonio 2009, pet. ref'd). A statement offered against a defendant may implicate the Confrontation Clause even when it is admissible under evidentiary rules. *Clark*, 282 S.W.3d at 930. An out-of-court statement implicates the Confrontation Clause whenever it is: (1) made by a witness who is absent from trial and (2) testimonial in nature. *Woodall v. State*, 336 S.W.3d 634, 642 (Tex. Crim. App. 2011). A statement is testimonial if "the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822 (2006). Whether a statement is testimonial is judged "by the standard of an objectively reasonable declarant standing in the shoes of the actual declarant." *Wall v. State*, 184 S.W.3d 730, 742–43 (Tex. Crim. App. 2006) (citing *Crawford v. Washington*, 541 U.S. 36, 52 (2004)). Because trial courts are no better equipped to apply this standard than appellate courts, we review whether a statement is testimonial de novo. *Id.*

> For an expert's testimony based upon forensic analysis performed solely by a non-testifying analyst to be admissible, the testifying expert must testify about his or her own opinions and conclusions. While the testifying expert can rely upon information from a non-testifying analyst, the testifying expert cannot act as a surrogate to introduce that information.

*Paredes v. State*, 462 S.W.3d 510, 517–18 (Tex. Crim. App. 2015) (concluding, where the testifying expert referred to results of DNA tests performed by non-testifying analysts, that the expert's testimony was nevertheless admissible under the Confrontation Clause because she "performed the crucial analysis determining the DNA match and testified to her own conclusions"); *see Bullcoming v. New Mexico*, 564 U.S. 647, 661–62 (2011)

4

(noting that "surrogate [expert] testimony" violated the Confrontation Clause because it "could not convey what [the non-testifying analyst] knew or observed about the events his certification concerned" nor could it "expose any lapses or lies on the [non-testifying] analyst's part").

The record reflects that, the day after Reyna testified, the State called John Doyle, who was a SAPD detective in January 2017. Doyle stated he was asked to "re[-]review" the data which Reyna downloaded from the ACM in Ortiz's car. He explained that, although O'Connell had initially reviewed the data, O'Connell had since moved to Wisconsin and was thus unavailable to testify at trial. Defense counsel objected to Doyle's testimony on grounds that it was duplicative of Reyna's testimony. The trial court asked for a response from the State, and the following colloquy occurred:

| [Prosecutor]: | Yes, Your Honor. So I think [defense counsel] has mistaken what Detective Reyna testified to yesterday, [which] was that he did pull the data, but he at the time of the crash did not have the certification to do the analysis of it, and that is why Detective O'Connell did the analysis of it. He also did not testify to the analysis.[5] He did not—Detective Doyle is prepared to testify to the downrated speed and force the deployment of the seatbelts. Those are things that Detective Reyna did not testify to yesterday because he had not done this analysis because Detective O'Connell had done it at the time. |
| --- | --- |
| THE COURT: | All right. That's my recollection, also, [defense counsel]. |
| [Defense counsel]: | I honestly may have been mistaken on that—that first part. |

The trial court overruled the objection. Doyle then proceeded to testify regarding the

---

[5] We note that Reyna testified as to the speed of Donaldson's truck at the time of the collision, which presumably was the product of someone's "analysis" because no data was recovered directly from the truck.

results of his own analysis of the downloaded data.

Donaldson does not address whether the information provided by Reyna and Lynch in their testimony was "testimonial" such that its admission in the absence of the non-testifying analyst would implicate his constitutional right to confront witnesses. *See Crawford*, 541 U.S. at 52; TEX. R. APP. P. 38.1(i) (requiring an appellant's brief to contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record").

However, even assuming the trial court erred by admitting the testimony of Reyna and Lynch, the errors would not be reversible. Constitutional error is not reversible if we determine beyond a reasonable doubt that the error did not contribute to the conviction. TEX. R. APP. P. 44.2(a); *see Simpson v. State*, 119 S.W.3d 262, 269–71 (Tex. Crim. App. 2003) (applying Rule 44.2(a) harm standard to a Confrontation Clause claim). When analyzing constitutional error, "the question for the reviewing court is not whether the jury verdict was supported by the evidence." *Scott v. State*, 227 S.W.3d 670, 690 (Tex. Crim. App. 2007). "Instead, the question is the likelihood that the constitutional error was actually a contributing factor in the jury's deliberations in arriving at that verdict—whether, in other words, the error adversely affected 'the integrity of the process leading to the conviction.'" *Id.* (quoting *Harris v. State*, 790 S.W.2d 568, 588 (Tex. Crim. App. 1989), *disagreed with on other grounds by Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011)). On appeal, Donaldson does not contest the admission of Doyle's testimony.[6]

---

[6] The State notes that "[t]he record clearly indicates that [] John Doyle, not [] Sergeant Reyna, was the witness that testified in place of Detective O'Connell." The State proceeds to construe Donaldson's first issue as challenging Doyle's testimony only. We will not construe the issue in this manner. Donaldson clearly challenges the testimony of Reyna and Lynch only; he does not mention or refer to Doyle or his testimony anywhere in his brief. *See Wolfe v. State*, 509 S.W.3d 325, 343 (Tex. Crim. App. 2017) (noting

*See Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003) ("An error in the admission of evidence is cured where the same evidence comes in elsewhere without objection."). He does not assert that the admission of Reyna's testimony or Lynch's testimony contributed to the outcome of the case in any way, nor does he provide any argument which would support such a conclusion. *See* TEX. R. APP. P. 38.1(i), 44.2(a).

We conclude beyond a reasonable doubt that the admission of Reyna's and Lynch's testimony did not contribute to Donaldson's conviction. *See* TEX. R. APP. P. 44.2(a). His first issue is overruled for that reason.

## B.    Prior Conviction

By his second issue, Donaldson contends that the trial court erred by "considering evidence at punishment regarding a previous conviction" because "the trial court's current spouse and former trial partner" was the prosecutor in the previous case.

The record reflects that Donaldson's trial counsel affirmatively stated he had no objection to the admission of subject records, which concerned a 1987 theft conviction.[7] Accordingly, the issue has not been preserved for appellate review. *See* TEX. R. APP. P. 33.1(a). Moreover, though Donaldson provides a single inaccurate citation to the record and a hyperlink to the trial court judge's campaign website, he cites no legal authority whatsoever in his discussion of this issue. *See* TEX. R. APP. P. 38.1(i). It is overruled.

## C.    Character Evidence

By his third issue, Donaldson argues that the trial court erred by admitting evidence

---

that "an appellate court has no obligation to construct and compose [an] appellant's issues, facts, and arguments with appropriate citations to authorities and to the record" (internal quotation omitted)); *Wyatt v. State*, 23 S.W.3d 18, 25, n.5 (Tex. Crim. App. 2000) ("We will not make appellant's arguments for him . . . ."); *see also* TEX. R. APP. P. 38.1(i).

[7] The 1987 theft conviction was not used for punishment enhancement purposes.

of Ortiz's character at the guilt-innocence phase of trial.

Rhiannon Rasmussen testified that she had known Ortiz since high school, that her husband was Ortiz's best friend, and that Ortiz was the godfather to her three children. Over defense counsel's relevance objections, Rasmussen stated, among other things, that Ortiz "took care of my children like they were his own children" and "was the nicest guy that you would ever know." The trial court also admitted photographs of Ortiz before his death, overruling defense counsel's relevance objection and stating: "I'm going to allow a little leeway because [the jurors] need to know who the victim is."

Donaldson contends that "[e]vidence of a victim's good or peaceable character is generally not admissible at the guilt phase of a trial, precisely because it is irrelevant or unfairly prejudicial." The only authority he cites in support of this issue is *Ex parte Thuesen*, No. WR-81,584-01, 2016 WL 748248 (Tex. Crim. App. Feb. 24, 2016) (order, not designated for publication), which he acknowledges is "[a]n unpublished opinion [sic], not cited herein as controlling authority, but only for a similar discussion." We note that the cited authority is an unpublished order which has no relevance to this case, although it is related to another unpublished case which contains a pertinent discussion. *See Thuesen v. State*, No. AP-76,375, 2014 WL 792038, at *21 (Tex. Crim. App. Feb. 26, 2014) (not designated for publication) ("[E]vidence of a victim's good or peaceable character is generally not admissible at the guilt phase because it is irrelevant or unfairly prejudicial.") (citing *Fuentes v. State*, 991 S.W.2d 267, 280 n.6 (Tex. Crim. App. 1999) ("It is never competent for the State to prove the victim's good or peaceable character in the first instance; such evidence becomes admissible only in rebuttal when the opposite has properly admitted on behalf of the defense, or when the defendant seeks to justify the

8

homicide on the ground of threats made by the deceased.")).[8]

Again, even assuming the trial court erred by admitting the subject testimony, Donaldson has not established that the error was reversible so as to warrant reversal of his conviction. Generally, the erroneous admission of evidence is non-constitutional error which we must disregard unless it affects the appellant's substantial rights. TEX. R. APP. P. 44.2(b); *see Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011). Under this standard, an error is reversible only when it has a substantial and injurious effect or influence in determining the jury's verdict. *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018). In deciding whether substantial rights were affected, we consider: (1) the character of the alleged error and how it might be considered in connection with other evidence; (2) the nature of the evidence supporting the verdict; (3) the existence and degree of additional evidence indicating guilt; and (4) whether the State emphasized the complained of error. *Id.* If we have "fair assurance from an examination of the record as a whole that the error did not influence the jury, or had but a slight effect, we will not overturn the conviction." *Id.*

As to how he was harmed by the error, Donaldson merely states, without reference to the record or authority: "Clearly, the intent of the prosecution's direct examination [of Rasmussen] was to engender the empathy of the jury, and to arouse passions against the defendant." We disagree. As Donaldson notes, Rasmussen's testimony did not implicate any specific element of the charged offense, *see* TEX. PENAL CODE ANN. § 19.04(a); therefore, it is exceedingly unlikely that the jury would have considered the

---

[8] The State argues that Rasmussen's testimony was relevant "to demonstrate the element of identity of the deceased." But Rasmussen testified only to Ortiz's character. There was no dispute as to the identity of the person killed in the collision and Rasmussen did not provide any testimony relevant to that issue.

evidence in determining whether Donaldson's guilt was proven beyond a reasonable doubt. Moreover, there was ample evidence supporting the verdict, and the State did not emphasize the character testimony or mention it in its closing argument. *See Gonzalez*, 544 S.W.3d at 373. On this record, we have fair assurance that Rasmussen's testimony played, at most, a negligible role in the jury's deliberations. Accordingly, any error in its admission would be harmless. *See* TEX. R. APP. P. 44.2(b).

We overrule Donaldson's third issue.

### III. CONCLUSION

The trial court's judgment is affirmed.

YSMAEL D. FONSECA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
13th day of March, 2025.